

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

United States of America,

vs.

Case No. 00-CR-6281-HIGHSMITH
MAGISTRATE JUDGE GARBER

Vladimir Yarosh.

_____/

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, Vladimir Yarosh ("Yarosh"), by and through counsel, hereby submits this Memorandum in Aid of Sentencing for the consideration of this Honorable Court in determining the appropriate sentence to be pronounced in this matter.

### I.   Introduction

Yarosh is a fifty-five (55) year old naturalized citizen of the United States who is a native of the former Soviet Union. Following almost ten years of denied visas to leave Russia, Yarosh emigrated to the United States in 1987 with his wife and two children to escape the harshness and persecution of Communist rule and to afford a better life for his family. In this country Yarosh enrolled in Miami Dade Community College where he learned to speak, read and write English. After numerous low-paying jobs during his acclimation to life in the United States, Yarosh operated several businesses engaged mainly in retail sales of paint and paint supplies, and minor home remodeling.

Yarosh and his wife raised their two children in south Florida, and instilled in them both a desire to succeed and to attend college. The two children have both become naturalized United States citizens. Yarosh's daughter, Miriam, received her Bachelor of Arts degree in Elementary Education from Florida Atlantic University; Yarosh's son, Rick, graduated from Nova Southeastern University with a Bachelor of

Science degree in Physical Therapy. Yarosh has also been a respected member of his community, and has helped many of his friends (some of them newly arrived Russian emigrees) with advice, help with the English language, and other assistance acclimating to American life. Letters from friends of Yarosh are appended hereto for the Court's reference.

On November 27, 2000 Yarosh pled guilty to count one of an Indictment charging conspiracy to commit passport and visa fraud, in violation of 18 U.S.C. § 371 and now stands before this Court awaiting its sentence.

The Pre-Sentence Investigation Report ("PSR") prepared in this matter by United States Probation Officer Frank E. Smith is both cogent and accurate. Yarosh concurs with Mr. Smith's recitation of the facts of this case and of his personal history and facts. Moreover, Yarosh accepts Mr. Smith's guidelines determinations, and does not seek any downward departure from his guideline calculation. Further, Yarosh withdraws his objection to the PSR determination that he is ineligible for a minor role reduction, and urges the Court to sentence him within the guidelines to a term of probation with a period of home detention.

Yarosh became aware of the government's investigation of the conduct at issue herein early in the year 2000 when his associate, Sergey Maximov, was arrested on similar charges. Yarosh himself was not indicted until some eight or nine months later. Since that time Yarosh has, through counsel, labored to work with the prosecutor to resolve this matter. Yarosh agreed to plead guilty, and provided the Government with all of the personal and financial records that were requested of him. As the PSR reflects, Yarosh has accepted full responsibility for his actions.

Yarosh's PSR correctly indicates that his total offense level is 9, and that he falls within Criminal History category I. His guideline sentence, therefore, is 4-10 months, placing him in the lowest level within Zone B of the Sentencing Guidelines. *See*, United States Sentencing Guidelines ("USSG") Sentencing Table. What Yarosh does urge upon this Court is that, pursuant to USSG § 5C1.1(c)(3), he should be sentenced to a term of probation that includes a period of home detention.

## II.  Yarosh Does Not Warrant Incarceration

It is undisputed that there are no allegations that Yarosh has a history of violence or that any violent acts were committed regarding the offense of conviction. Further, Yarosh has no involvement or history of involvement with illicit drugs or other controlled substances. Without condoning Yarosh's actions herein, and without seeking to belittle their significance, Yarosh respectfully urges this Court to consider these factors in mitigation, and to conclude that a sentence that does not include a term of incarceration is appropriate under these circumstances.

### A.  The Guidelines Expressly Provide That No Incarceration is Necessary

The United States Sentencing Guidelines, at § 5C1.1(c)(3), provide that where the applicable guideline range is within Zone B of the sentencing table, as Yarosh's is (4-10 months), "the minimum term may be satisfied by -- . . . a sentence of probation that includes a condition . . . of . . . home detention for imprisonment according to the schedule in subsection (e)." Subsection (e) provides that home detention is equivalent on a day-for-day basis with imprisonment. "The guidelines treat home confinement as an option for 'widening the net' – meting out more serious punishment and ensuring greater control over offenders than regular probation." Paul J. Hofer and Barbara S.

MALMAN, MALMAN & ROSENTHAL • 12955 BISCAYNE BOULEVARD • SUITE 202 • NORTH MIAMI, FLORIDA 33181 • (305) 891-0066

Meierhofer, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System*, Federal Judicial Center, 1987.

Thus, without any departures or adjustments, a sentence of 4-10 months probation that includes any term of home detention would be a correct application of the sentencing guidelines in this matter.

**B.    For Yarosh Such a Sentence is Appropriate**

As stated, Yarosh has no history of violence or controlled substance involvement. This is significant for the Court to consider when fashioning an appropriate sentence in this matter.

### 1.    Scarce Prison Space Should be Used for Violent and Repeat Offenders

Systemically, our country faces the dilemma of an ever-growing population of incarcerated prisoners. As reported in the New York Times, "[s]ince 1985 the nation's jail has grown 130 percent, and it will soon pass two million, even as crime rates continue a six-year decline. No country has more people behind bars, and only one, Russia, has a higher incarceration rate . . . ." Timothy Egan, *The War on Crack Retreats, Still Taking Prisoners*, N.Y. Times, Feb. 28, 1999, at A1, A20.

Because of this problem of epic proportions, it has been suggested that incarceration be used as a punishment and deterrent for those who commit serious crimes and those involved with controlled substances. For example, a New York Times article tracking the increase in elderly prison inmates, and the economic drain of caring for them, quotes the warden at the Angola State Penitentiary in Louisiana as recommending that "[w]e need our prison beds for the predators who are murdering

people today." Rick Bragg, *Where Alabama Inmates Fade Into Old Age*, N.Y. Times, Nov. 1, 1995, at A1.

### 2. Home Detention Provides Harsh Punishment

Stephen J. Rackmill, then-Chief United States Probation Officer for the Eastern District of New York, authored "An Analysis of Home Confinement as a Sanction," 59 Federal Probation 1, 45 (March, 1994). He concluded that "a strong commitment must be made to programs designed to develop meaningful strategies to combat the problems of prison overcrowding. This can only be done by exploring other methods that will safely control eligible offenders within the community." *Id.* at 51. Although home detention is certainly less restrictive than imprisonment, it is by no means an easy sentence. Mr. Rackmill observed that "[h]ome detention tends to be strictly enforced and provides significant control over an offender's movement." *Id.* at 46. This observation was echoed in an article in the Miami Herald, which found that "[d]efendants who are sentenced to house arrest may appreciate the chance to remain with their families, but in the end usually conclude it's harsher punishment than prison. . . ." Jack Wheat, *House arrest no picnic, study finds*, Miami Herald, August 8, 1999; *see also* Paul J. Hofer and Barbara S. Meierhofer, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System*, Federal Judicial Center, 1987 ("some home confinement programs are perceived to be equally or more punishing than imprisonment. . . .")

In a case such as this, where violence and drugs are not an issue, we respectfully urge that it is proper for a sentencing court to apply the guidelines to fashion

a sentence that is appropriate for the defendant, for the criminal act(s) committed, and for the system as a whole.

### III.  No Fine Should be Imposed

As the PSR concludes based upon a review of Yarosh's finances, he is unable to pay a fine.  Although his business had flourished in the past, a large percentage of Yarosh's business dealt with selling merchandise to customers in the former Soviet Union and other countries in that geographical area.  Because of economic problems in the area and unstable governments, much of this business has been eliminated.  Yarosh was forced to file for bankruptcy, which case remains pending in this district.

Because Yarosh does not have the ability to pay a fine, we respectfully urge the Court not to impose one.

### IV.  Conclusion

Yarosh is a non-violent, non-drug related offender, who immediately accepted responsibility for his actions and cooperated with the Government, including submitting to interviews with Immigration and Naturalization Service agents, providing documentation, and entering into an agreement to plead guilty to the charges herein.

Because of the factors set forth above, we respectfully urge this Court to sentence Yarosh to a non-incarcerative sentence that includes a period of home detention, followed by supervised release.  We further urge the Court to impose no fine upon Yarosh, taking into consideration his negative net worth, substantial debt, and the finding of the Probation Officer that he is unable to pay a fine.

Respectfully submitted,

Malman, Malman & Rosenthal
12955 Biscayne Boulevard
Suite 202
North Miami, Florida 33181
Tel. (305) 891-0066
Fax. (305) 891-1015

BY: _____
Jonathan H. Rosenthal
Florida Bar No. 126764

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile and United States mail to Diana L.W. Fernandez, Esquire, Office of the United States Attorney, Southern District of Florida, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33394 Frank E. Smith, United States Probation Officer, Southern District of Florida, 299 East Broward Boulevard, Room 409, Fort Lauderdale, Florida 33301 this 30TH day of January, 2001.

By: _____
Jonathan H. Rosenthal

Vladimir L. Geykhman, Ph.D
6, Chkalova Street
Moskow, Russia 711312
(095) 131-0815

January 17, 2001

The Honorable Shelby Highsmith
United States District Judge
Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33131

    I, Vladimir Geykhman, presently living in Moscow, Russia, attorney at law, owner of a law firm, professor and Vice President of Moscow Law University, have known Vladimir Yarosh for more than 10 years.
As being very good friends, during my present vacation in the US, Vladimir Yarosh has told me about his present situation.
    Knowing a person for more than ten years, gives a very solid and definite opinion about that person. My opinion about my friend, Vladimir Yarosh, is that he is very honest, reliable man. Loving father and husband. He is one of people who I will trust with my life and life of my family without any hesitations and doubts. Also, Vladimir, has been watching over and helping me to take care of my granddaughter, who lives in US by herself. Moreover, that makes me feel save about my granddaughter's well being. I know and sure that if she needs any help or advise, Vladimir Yarosh will do any thing possible, as if I would do it for her, to help her.
I am grateful that my family and I have such a good friend as Vladimir Yarosh. God Bless him.

Sincerely,

Vladimir Geykhman

Yelena Dash
Boris Dash
2612 NE 10 Str
Hallandale, Fl 33009
Tel (954)458-5699
Fax (954)458-5699

The Honorable Shelby Highsmith
United States District Judge
Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33131

January 18, 2001

Dear Judge Highsmith:

My name is Yelena Dash. I am a mother of two, and live with my husband for 18 years. I work as a Computer Programmer.

I know Mr. Yarosh for over 10 years. He's always been a very good friend to my family, always ready and willing to give a hand whenever needed.

I enjoy coming to his house, knowing that I will always be greeted with smile and good joke, warm friendly atmosphere, and dinner on the table. Notwithstanding the fact that Vladimir, as everybody, has his ups and downs, I've never seen him in a bad mood, heard rude jokes, or experience any discomfort in his presence. His light mood, open smile, and warm heart bring up my spirits in the worst of times I've experienced thru the years.

When we came to United States from Russia, it was a very difficult time for our family to adjust and find ourselves in new society. We found great help in Vladimir Yarosh, who was living in Miami for about six months then. Even though he had his own problems and difficulties with two children and a sick wife, he found time and energy to give us a helping hand: set up appointments (our English was next to zero), drive us around for food shoppings and other necessities, bring us hope and faith we needed greatly at that time.
During the course of few years, we had to move a lot. Every time, he was there, ready and willing to help, physically and morally, as much as needed, and more. However, he would refuse any money, getting upset even at the suggestion of it. Instead, we would come to his house, always filled with friends and family members, enjoy conversations, and have a good time together. He regards these experiences as greatest rewards.

Here, in Miami, we met many other people who also felt Vladimir's warmth and friendship, and everybody talks about what a great person he is in every aspect. No wonder, he has plentiful friends and acquaintances, who respect and love him.

Sincerely,
Yelena & Boris Dash